IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SOFT STUFF DISTRIBUTORS, INC., ET AL.  :

v.  :  Civil No. CCB-11-2605

RYDER TRUCK RENTAL, INC.  :

## MEMORANDUM

Plaintiff Soft Stuff Distributors, Inc. ("Soft Stuff") brings this putative class action lawsuit against Ryder Truck Rental, Inc. ("Ryder") for alleged fraudulent invoicing practices related to fuel purchases by Ryder customers. Ryder filed a motion to dismiss the original complaint, Soft Stuff filed a response in opposition, and Ryder filed a reply. Before any ruling on the motion, Soft Stuff filed a motion for leave to file an amended complaint, attaching a proposed amended complaint. Ryder filed a brief in opposition, and Soft Stuff filed a reply. No oral argument is necessary. *See* Local Rule 105.6. For the following reasons, the motion to dismiss will be granted and the motion for leave to file the proposed amended complaint will be denied.

### I. BACKGROUND

Soft Stuff is a baked goods distributor based in Jessup, Maryland. To distribute their products, the company leased trucks for "many years" from a Maryland facility of Ryder, a national company that has its principal place of business in Florida. (Def.'s Mot. Dismiss 2, ECF No. 12.) Ryder provided Soft Stuff with leased trucks and also with maintenance and fuel services. To access

1

these services, Soft Stuff employees drove the leased trucks to the Ryder facility, where Ryder employees would pump the fuel and perform other tasks. (*Id.*) Ryder "fuel pumps show the amount dispensed to the hundredth of a gallon," (Def.'s Reply Mot. Dismiss 13, ECF No. 20), but Ryder's fuel invoices measured the fuel purchases only by the whole gallon. (*See* Invoices, ECF No. 12-1.) Soft Stuff employees were required to sign the invoices on site subsequent to the fueling services. (Def.'s Mot. Dismiss 2.)

Soft Stuff alleges that Ryder applied a method of rounding fuel sales to the nearest whole gallon that "statistically and mathematically results in Ryder receiving payment for fuel that is not being purchased." (Compl. ¶ 15, ECF No. 1.) Specifically, the complaint alleges, Ryder "maintained a pattern and practice of rounding up to the cost of the next full gallon of fuel when the vehicle . . . required 4/10 of a partial gallon or more." (*Id.* at 10.) Soft Stuff clarified the allegation in its opposition brief and then again later in the proposed amended complaint. "Consider for example," the opposition brief reads, "where Defendant dispenses 9.41/gallons of fuel but charges and receives payment from Plaintiff for 10/gallons, even though Plaintiff has actually received less than 10 gallons. Under the same rounding and invoicing procedure, when Defendant dispenses 9.4/gallons of fuel, it invoices and charges Plaintiff for 9/gallons." (Pl.'s Opp. Mot. Dismiss 6, ECF No. 17.) According to Soft Stuff, Ryder customers are not advised in any way of this nontraditional method of rounding, even though the method on the whole results in customers being charged for more gallons of fuel than they actually receive.[1]

---

[1] The parties appear to agree that a traditional rounding scheme—where volumes with decimals of 0.49 would be rounded down and those with decimals of 0.50 would be rounded up—would not necessarily cause any injury to repeat customers like Soft Stuff. Repeat customers would benefit from such a rounding procedure as much as they would be injured by it, and overall minimal or no economic harm would result. The alleged impropriety, therefore, was not the use of a rounding procedure in the first place, but rather that there was no mathematical or statistical justification for the alleged procedure of rounding *up* the volumes with decimals between 0.41 and 0.49 gallons.

In its motion to dismiss, Ryder does not expressly deny applying the above-described rounding procedure.[2] Instead, among other arguments, the company contends that the agreements the parties signed require the court to dismiss Soft Stuff's complaint. On November 28, 2005, the parties signed a Truck Lease and Service Agreement ("TLSA") (*see* ECF No. 12-2), and over the next three years the parties signed six different amendments to that document. (*See* ECF Nos. 12-3 to 12-8.) The TLSA contains the following language about fuel services:

> When Ryder is designated on Schedule A, Ryder will provide fuel for each Vehicle from a Ryder or Ryder-designated facility. Ryder's charge for fuel it provides will vary over time. Fuel charges are incidental and are billed in addition to all other lease charges. If your account is past-due, Ryder may elect to stop providing fuel to you. You will be responsible for the cost of fuel you obtain from other sources and cannot charge these costs to your Ryder account.

(TLSA § 3). The Schedules then provide additional detail regarding the fuel sales. After listing the vehicles to which each applies, each states: "Ryder will provide fuel for the Vehicles and charge you for any fuel it provides in accordance with the terms of the TLSA and in addition to all other lease charges." (2005 Schedule A § 13, ECF No. 12-5; 2007 Schedule A § 13, ECF No. 12-7; 2008 Schedule A § 13, ECF No. 12-8.)

Finally, the TLSA, as amended, also mandates that lease customers

> pay Ryder the full amount of its invoices within 10 days of the invoice date without deduction, setoff, recoupment or counterclaim. If you dispute the amount of any invoice for any reason, you shall immediately notify Ryder of such dispute. . . . *Each invoice will be conclusively deemed correct, unless you notify Ryder in writing of any error within 90 days of the invoice date.*

(First TLSA Amend. ¶ 5, ECF No. 12-3 (emphasis added). ) Soft Stuff does not allege that, prior to filing this lawsuit, Soft Stuff ever notified Ryder in writing of any error in the fuel invoices. Ryder

---

[2] Ryder does appear to deny the existence of the alleged policy in its reply memorandum. (ECF No. 19, at 4 n.2.)

contends that this failure is fatal to all of Soft Stuff's claims.

On September 13, 2011, Soft Stuff filed this class action complaint against Ryder. The complaint contains four causes of action: fraud (Count I), breach of contract (Count II), deceptive trade practices under Maryland Code § 13-303 (Count III), and unjust enrichment (Count IV). The complaint asks for damages and injunctive relief and contends there are other similarly situated persons who also purchased fuel from Ryder subject to the same allegedly unlawful practices and policies.

On October 24, 2011, Ryder moved to dismiss the complaint pursuant to Rule 12(b)(6). The motion makes several arguments, but focuses on the clause in the TLSA that deems invoices presumptively correct after 90 days. On November 23, 2011, Soft Stuff filed a brief in opposition to the motion to dismiss. In the opposition brief, Soft Stuff argues that the contractual obligations in the action do not arise from the TLSA, but rather from the implied-in-fact contract created between the parties on each individual occasion when fuel is purchased. On December 8, 2011, Ryder filed a reply brief.

On February 15, 2012, before any ruling on the motion, Soft Stuff filed a motion for leave to file an amended complaint, attaching a copy of a proposed amended complaint. The proposed amended complaint did not contain significant new factual allegations, but did include some of the arguments that Soft Stuff had made in its previous opposition brief. Following this motion, Ryder filed a brief in opposition and Soft Stuff filed a reply. The court now considers both pending motions.

## II. **LEGAL STANDARDS**

4

A Rule 12(b)(6) motion tests the sufficiency of the complaint and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on a 12(b)(6) motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The plaintiff's obligation is to *show* sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* It is not sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id*. at 1949 (internal quotations and citation omitted).

Federal Rule of Civil Procedure 15(a)(2) encourages district courts to "freely give leave [to file an amended complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has counseled, however, that "leave to amend is not to be granted automatically." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). Rather, "[d]isposition of a motion to amend is within the sound discretion of the district court." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A district court may deny leave to amend "only when the amendment would be prejudicial to the opposing

5

party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards*, 178 F.3d at 242). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face," *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986), or if the amended claim would "still fail to survive a motion to dismiss" pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995).

### III. DISCUSSION

#### A. Fraud

Soft Stuff's common law fraud claim must be dismissed. To state a claim for fraud, a plaintiff must allege that:

> (1) the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008) (quoting *Maryland Envtl. Trust v. Gaynor*, 803 A.2d 512, 516 (Md. 2002)).[3] Soft Stuff fails to allege facts, in either the original or the amended complaint, that might reasonably support the necessary elements of false representation or justifiable reliance.

The false representation prong of a fraud claim may be met by showing an affirmative false representation, a failure to disclose where there is a legal duty to do so, or an act to conceal a

---

[3] Sitting in diversity jurisdiction, the court applies the choice-of-law rule of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). For tort claims, "Maryland adheres to the *lex loci delicti* rule," applying the law of the state in which the alleged injury occurred. *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Thus, Maryland substantive law governs the fraud and deceptive trade practices claims in this case.

material fact. *See United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000) (citing Restatement (Second) of Torts § 550 (1977)). Here, the invoices cannot be categorized as affirmative misrepresentations. The invoices show that Soft Stuff fuel purchases from Ryder were made in whole gallon increments that logically would appear to be the product of a rounding procedure. (*See* ECF No. 12-2.) Thus, customers—at least repeat and sophisticated business customers like Soft Stuff—were on notice that the invoices might not reflect the exact amount of fuel provided. And, except in circumstances not present here, "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." *Gaynor*, 803 A.2d at 516.

Thus, Soft Stuff's claim turns on whether it can prove that Ryder took some "affirmative action to conceal" the alleged nontraditional rounding procedure. *Rhee v. Highland Dev. Corp.*, 958 A.2d 385, 390 (2008) (citation omitted). The factual allegations supporting such a claim, however, are exceedingly thin. Soft Stuff notes that Ryder's policy required Ryder employees to pump the fuel, Soft Stuff drivers to turn off their truck's engines, and Ryder employees to perform multiple tasks during fuel fill-ups. (Pl.'s Opp. Mot. Dismiss 13–14, ECF No. 17.) These alleged facts were not included in either the complaint or the proposed amended complaint, but in any case they fall far short of supporting a "reasonable inference" that Ryder actively concealed a deceptive rounding procedure during the fill-ups. *Iqbal*, 129 S. Ct. at 1949. Each of the procedures has a far more obvious explanation that has nothing to do with deceptive rounding procedures. Further, nothing is alleged that prevented Soft Stuff employees from viewing the pumping procedures and comparing the amounts on the pump with the invoices they signed off on.

In addition, even if the court were to find plausible the claim of affirmative fraudulent statements or fraudulent concealment, Soft Stuff has not sufficiently alleged that it reasonably relied

7

on the alleged false representations.  "In determining if reliance is reasonable, a court is required to 'view the act in its setting, which will include the implications and promptings of usage and fair dealing.'"  *Sass v. Andrew*, 832 A.2d 247, 267 (Md. App. 2003) (quoting *Giant Food v. Ice King*, 536 A.2d 1182, 1186 (Md. App. 1988)).  Soft Stuff has failed to demonstrate any industry standard for rounding procedures that would make its reliance on the Ryder invoices reasonable.

Soft Stuff directs the court to two documents of the National Institute of Standards and Technology ("NIST") that address the operation and inspection of retail fuel pumps, but do not discuss rounding procedures.  (*See* ECF Nos. 18 & 18-1.)  The documents demonstrate that retail fuel pumps generally measure and price fuel based on increments smaller than a gallon, but do not demonstrate that there is any customary procedure used when rounding does occur.  If in fact *any* rounding to the nearest gallon is unusual, however, it only suggests to the court that Ryder's use of whole gallon increments should have served as a warning to Soft Stuff that it could not assume any specific method was being used without further investigation.  *See Rozen v. Greenberg*, 886 A.2d 924, 931 (Md. App. 2005) (noting that while a party otherwise has no duty to investigate, there is an exception where he "has discovered something which should serve as a warning that he is being deceived").

Under certain circumstances the non-disclosure of an improper rounding procedure may plausibly support a fraud claim, in particular where the plaintiffs are individual consumers.  *See, e.g., Morris v. Wachovia Sec., Inc.*, 277 F. Supp. 2d 622, 641 (E.D. Va. 2003) (finding securities fraud adequately alleged where there was no evidence that the rounding method applied to securities fees was "a matter of accepted industry practice"); *Ball v. GTE Mobilnet of California*, 96 Cal. Rptr. 2d 801, 811 (2000) (concluding there is a "reasonable possibility that plaintiffs can allege state law

causes of action based on inadequate disclosure of non-communication time charges," including for the practice of rounding up phone call minutes). *But see Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (rejecting fraud claim for phone company practice of rounding up long-distance service minutes after finding that "no reasonable customer could actually believe that each and every phone call she made terminated at the end of a full minute").

Here, however, the facts as alleged in the original and the amended complaint do not support reasonable reliance and therefore do not support a cause of action for fraud. Nothing stopped Soft Stuff employees from viewing the pumping process, Soft Stuff executives had at least constructive knowledge of the fact that Ryder was employing a rounding procedure, the company could have—but apparently did not—clarify the nature of the procedure employed, and Soft Stuff had the right to purchase fuel from outside sources. Finally, and most importantly, the parties here are sophisticated businesses, a factor that distinguishes this case from the types of rounding cases cited above. "[I]n determining whether the reliance was reasonable, the background and experience of the party that relied upon the representation is relevant." *Goldstein v. Miles*, 859 A.2d 313, 333 (Md. App. 2004) (citing *Parker v. Columbia Bank*, 604 A.2d 521, 529 (Md. App. 1992)). "This situation was not one in which one party was a sophisticated business entity and the other an inexperienced consumer." *Id.* Soft Stuff's fraud claim therefore must be dismissed and the motion for leave to amend denied as to that claim.

### B. Breach of Contract

Soft Stuff's breach-of-contract claim is based on an implied-in-fact contract theory. According to the theory, each time Soft Stuff utilized Ryder's fuel service facilities, "a mutual

agreement existed between the Parties that [Soft Stuff] agreed to purchase a specified amount of fuel from [Ryder] certain price per gallon." (Pl's. Opp. to Mot. Dismiss 8–9, ECF No. 17.) Thus, a breach of an implied-in-fact contract occurred each time fuel measurements were rounded up to the next gallon. Soft Stuff emphasizes that it "does not contend that [Ryder's] contractual obligation arise from the Parties' TLSAs." (*Id.* at 8.)

Ryder has consistently argued that any breach-of-contract claim cannot succeed because of the clause in the TLSA that presumes invoices to be correct unless there has been notice otherwise within ninety days ("the 90-day clause"). In its opposition to Ryder's motion to dismiss, Soft Stuff addressed this argument only in a footnote, claiming that such an argument is "without basis" because Soft Stuff "is not using the TLSAs as the underlying premise for any of its claims against Defendant." (Pl's. Opp. Mot. Dismiss 8 n.4.) To strengthen this argument, Soft Stuff added language in the proposed amended complaint, stating that "there were no terms, conditions or understandings associated with the lease concerning the purchase or sale of fuel. Rather, the purchase and sale of fuel would be undertaken at arms length without regard to the lease." (Proposed Am. Compl. ¶ 2, ECF No. 21-1.)

Before discussing Ryder's response, the court notes that this last statement from Soft Stuff's proposed amended complaint is not accurate. The TLSA documents contain three separate provisions addressing fuel sales. Most specifically, the Schedule A forms that are expressly incorporated into the TLSA state that Ryder will charge "for any fuel it provides in accordance with the terms of the TLSA . . . ." (2005 Schedule A § 13; 2007 Schedule A § 13; 2008 Schedule A § 13.) Soft Stuff acknowledged as much in its original complaint, which stated that "Plaintiff Soft Stuff Distributors ('Plaintiff') maintained a contract ('the Agreement') for the lease of vehicles to

10

distribute its baked products with Defendant Ryder Truck Rental, Inc. ('Defendant'). *As part of the Agreement*, Defendant was required to provide fuel service for its vehicles at Plaintiff's expense." (Compl. ¶ 2 (emphasis added)).

That the TLSA documents do in fact purport to govern the terms and conditions of the fuel servicing is fatal to Soft Stuff's implied-in-fact contract claim. "[A] claim of an implied in fact contract cannot survive where a valid, express contract exists that covers the same subject matter." *White Const. Co., Inc. v. Martin Marietta Materials,* 633 F. Supp. 2d 1302, 1334 (M.D. Fla. 2009).[4] Furthermore, as Ryder argues, the TLSA contains a merger provision stating that "[T]he Agreement can be modified only by a written amendment signed by a duly authorized representative of the party," and "[a]ny attempt to modify [the contract] orally or through course of performance shall be void." (TLSA ¶ 15(I).) As a result, the TLSA terms and conditions—including the 90-day clause—continued to govern the contested invoices.

Soft Stuff belatedly raised new arguments in its reply brief supporting the motion for leave to file an amended complaint. In that brief, Soft Stuff argued that the TLSA (at least as applied here) and the 90-day clause are void for lack of consideration; for failure to include material terms; for lack of equitable or damage remedies; and for contravening a Florida statute, Fla. Stat. § 95.03, which governs the fixing of statutes of limitations. Ryder had no opportunity to address these arguments, and the court therefore need not consider them. *See Clawson v. FedEx Ground Package Sys., Inc.,* 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.")

In any case, the arguments appear to carry little weight. The TLSA fuel provisions contained

---

[4] By its terms, the TLSA is governed by the substantive law of Florida. (*See* TLSA § 15.L, ECF No. 28-1, at 6.)

sufficient consideration because Ryder's contractual right to decline to sell fuel to Soft Stuff was not unilateral, but rather conditioned on non-payment of invoices. *See Bossert v. Palm Beach Cnty. Comprehensive Cmty. Mental Health Ctr., Inc.*, 404 So. 2d 1138, 1139 (Fla. Dist. Ct. App. 1981) ("The fact that a contract may, under certain definite circumstances, be terminable at the option of one of the parties does not, as a matter of law, render the contract unenforceable for want of mutuality."). The sales of gasoline are governed by the Uniform Commercial Code, which allows an "open price term." *United Food Mart, Inc. v. Motiva Enterprises, LLC*, 457 F. Supp. 2d 1329, 1334–35 (S.D. Fla. 2005) (citing Fla. Stat. § 672.305). And it is not clear that Florida Statutes § 95.03 applies to contract provisions that do not expressly bar contract suits, even if the provision at issue may in some other way limit recovery. *See Fireman's Fund Ins. Co. v. Levine & Partners, P.A.*, 848 So. 2d 1186, 1188 (Fla. Dist. Ct. App. 2003) (finding § 95.03 did not affect an insurance policy clause limiting covered losses to those discovered "within 90 days after the end of the coverage period").

Accordingly, the terms of Soft Stuff's fuel purchases were governed by the TLSA and not the separate implied-in-fact contracts that Soft Stuff has alleged. Soft Stuff has not identified any TLSA provision that Ryder violated through its rounding procedure, has not properly raised any objection to the 90-day clause, and has not identified any other theory under which a breach-of-contract claim may proceed. The claim therefore will be dismissed and the motion to file an amended complaint denied as to this claim.

### C. Maryland Consumer Protection Act

Ryder's interpretation of the Maryland Consumer Protection Act ("CPA") is correct. The

"Maryland Court of Appeals has clarified . . . that 'the CPA applies only where the purchaser intends to use the goods for 'personal, household, family, or agricultural purposes.''" *D&G Flooring, LLC v. Home Depot U.S.A., Inc.*, 346 F. Supp. 2d 818, 823 (D. Md. 2004) (citing *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 635 (Md. 1995)). Soft Stuff does not attempt to argue that the fuel purchases at issue here meet this requirement. Rather, Soft Stuff appears to imply in its proposed amended complaint and related briefing that other Ryder consumers might meet this requirement, and that therefore this claim should survive as part of a class action in which Soft Stuff would be the lead plaintiff. (Pl.'s Reply Supporting Mot. Amend 14, ECF No. 28.) This argument is foreclosed. "[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The deceptive trade practices claim (Count 3) will therefore be dismissed and the motion for leave to amend denied as to this claim.

### D. Unjust Enrichment

Soft Stuff's argument in support of its unjust enrichment claim parallels its breach-of-contract claim and is similarly unavailing. As with claims for breach of an implied-in-fact contract, the Maryland Court of Appeals has held that, except under circumstances not shown here, such as fraud, "quasi-contractual claims such as . . .unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609–10 (Md. 2000).[5]

---

[5] Maryland courts apply the doctrine of *lex loci contractus* to unjust enrichment claims. *See RaceRedi Motorsports, LLC*

According to Soft Stuff, the "TLSAs have no bearing on or relation to Plaintiff's unjust enrichment claim," which arises "out of the implied-in-fact contract" and therefore "does not contain the same subject matter as the Parties' TLSAs, nor does it impose the same contractual obligations as the TLSAs upon Plaintiff and Defendant." (Pl.'s Opp. to Mot. Dismiss 18–19.) As discussed above, however, the TLSA states that fuel charges will be provided "in accordance with the terms of the TLSA," (2005 Schedule A § 13; 2007 Schedule A § 13; 2008 Schedule A § 13), which includes the 90-day clause. Thus, the TLSA "controlled th[e] subject matter" of the fuel invoices, *Cnty. Comm'rs*, 747 A.2d at 610, and therefore limits Soft Stuff's ability to bring this claim for unjust enrichment.

### E. Injunctive Relief

The failure of Soft Stuff's other claims leaves no basis for injunctive relief. Soft Stuff appears to plead injunctive relief as a separate claim, but a request for injunctive relief "does not constitute an independent cause of action." *Fare Deals, Ltd. v. World Choice Travel.com*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001) (citing *Howell Petrol. Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir. 1992)). Rather, injunctive relief is a "remedy sought for the legal wrongs alleged in the . . . substantive counts." *Id.* Thus, as all the substantive counts will be dismissed, Soft Stuff's request for injunctive relief must also be dismissed.

### **CONCLUSION**

For the above reasons, Ryder's motion to dismiss will be granted as to all claims and the

---

*v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 665–66 & n.5 (D. Md. 2009) (citing *Konover Prop. Trust Inc. v. WHE Assocs., Inc.*, 790 A.2d 720, 728–29 (Md. App. 2002)). The parties appear to agree that the contract was executed in Maryland

14

court will deny Soft Stuff leave to file the proposed amended complaint.

      A separate order follows.

<u>July 30, 2012</u>             <u>       /s/       </u>
Date                             Catherine C. Blake
                                  United States District Judge

---

and therefore that Maryland substantive law applies to this claim.